**McGuireWoods LLP**
Sabrina A. Beldner (SBN 221918)
sbeldner@mcguirewoods.com
Selwyn Chu (SBN 285568)
schu@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Telephone: 310.315.8200
Facsimile: 310.315.8210

Attorneys for Defendants Genpact
LLC and Antara Chatterjee

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASSY RUEWELER, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>GENPACT LLC; a New York Limited Liability Company; ANTARA CHATTERJEE, an individual; DOES 1 through 20, inclusive,<br><br>        Defendants. | CASE NO.<br><br>[Los Angeles County Superior Court Case No. 24STCV07966]<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]** |

188472011.4

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendants Genpact LLC and Antara Chatterjee, by and through their counsel, and without waiver or limitation of any defenses or rights, which are hereby fully and expressly reserved, hereby remove the above-captioned action from the Superior Court of the State of California in and for the County of Los Angeles (the "State Court"), in which the action is currently pending, to the United States District Court for the Central District of California on the grounds that this Court has jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and all other applicable bases for removal. In support of this Notice of Removal, Defendants aver as follows:

## PLEADING AND PROCEDURES

1. On March 28, 2024, Plaintiff Tassy Rueweler ("Plaintiff") filed a Complaint (the "Complaint") in State Court commencing this civil action against Genpact LLC, Antara Chatterjee, and Does 1 through 20, in a case styled *Tassy Rueweler, an individual v. Genpact LLC, a New York Limited Liability Company, Antara Chatterjee, an individual, and Does 1 through 20, inclusive*, Case No. 24STCV007966 (the "State Court Action"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. Genpact LLC was served with a copy of the Summons and Complaint on April 9, 2024. As of the date this Notice of Removal was filed, Antara Chatterjee has not been served.

3. The following additional documents are also on file in the State Court Action, which are attached hereto as the Exhibits identified below:

| **Exhibit** | **Description** |
|:---:|:---:|
| **B** | Summons |

188472011.4

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]

| C | Civil Case Cover Sheet |
|---|---|
| D | Alternative Dispute Resolution (ADR) Information Packet |
| E | Notice of Case Assignment – Unlimited Civil Case |
| F | Notice of Case Management Conference |
| G | Proof of Service of Summons as to Genpact, LLC |

4. The aforementioned documents and exhibits constitute all the process, pleadings, and orders on file in the State Court Action.

5. Pursuant to 28 U.S.C. § 1446(b)(2), all defendants who have been properly joined and served must join in or consent to the removal of the action. *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("requirement that all codefendants 'join' in requesting removal" is satisfied when "one defendant avers that all defendants consent to removal"). Genpact LLC is the only Defendant that has been served, and both Genpact LLC and Ms. Chatterjee, through undersigned counsel, consent to removal.

6. Defendants are informed and believe that there has been no service of process upon Defendants Does 1 through 20, which are fictitious defendants and therefore properly disregarded for the purpose of this removal. *See* 28 U.S.C § 1441(a).

7. As required by 28 U.S.C. § 1441, Defendants seek to remove this case to the United States District Court for the Central District of California, which is the District Court embracing the place where the State Court Action has been filed.

8. In accordance with 28 U.S.C. § 1446(d), Defendants will provide contemporaneous written notice of this Notice of Removal to all adverse parties and

to the Clerk of the State Court.

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a), 28 U.S.C. § 1441, and all other applicable bases for removal.

## TIMELINESS OF REMOVAL

10.     This action has not previously been removed to federal court.

11.     Pursuant to 28 U.S.C. § 1446(b), a notice of removal "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based."

12.     As set forth in paragraph 2, Genpact LLC was served on April 9, 2024 and Defendant Antara Chatterjee has not yet been served.  Thus, the removal of this action to this Court is timely under 28 U.S.C. § 1446(b).  *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354, (1999) ("[I]f the complaint is filed in court prior to any service, the removal period runs from the service of summons.").

## REMOVAL JURISDICTION – DIVERSITY

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a), and this action is one which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(a)–(b) because: (1) there is complete diversity of citizenship between Plaintiff, on the one hand, and Defendants, on the other hand; and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## CITIZENSHIP OF PARTIES

14.     **Plaintiff's Citizenship.**  At all relevant times, Plaintiff has been a resident of the state of California.  Indeed, at all relevant times, Plaintiff's home address of record with Genpact LLC was in California, and, as demonstrated by Plaintiff's Notice of Case Closure and Right to Sue from the Department of Fair Employment and Housing ("DFEH"), which reflects that her residential address of record is in California.  Further, Defendants are informed and believe and thereon

allege that Plaintiff's domicile is presently in California and that Plaintiff intends to indefinitely remain in California. Accordingly, Plaintiff is a resident and citizen of the state of California for purposes of traditional diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also, e.g.*, *Mondragon v. Capital One Auto Fin.*, 776 F.3d 880, 885-86 (9th Cir. 2013) (person's continuing domicile in a state establishes citizenship for purposes of removal "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797 F.2d 747, 751–752 (9th Cir. 1986) (party domiciled in state of party's address); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

15. **Defendants' Citizenship.** Defendant Genpact LLC is a wholly owned subsidiary of Genpact USA, Inc., which is incorporated in Delaware and has its principal place of business in New York; thus, Genpact LLC is a citizen of the states of Delaware and New York. 28 U.S.C. § 1332(c); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 902 (9th Cir. 2006) (holding "LLCs have the citizenship of all of their owners/members").

16. Antara Chatterjee is a resident and citizen of Bucharest, Romania. As such, she is a "citizen of a foreign state" for the purposes of 28 U.S.C. § 1332(a)(2).

17. None of the Defendants are a citizen of the state of California.

18. **Doe Defendants.** Defendants "Does 1 through 20" are fictitious defendants whose citizenship is disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a).

19. Accordingly, there is complete diversity between Plaintiff, on the one hand, and Defendants, on the other hand.

## AMOUNT IN CONTROVERSY

20. An action may be removed to and remain in federal court if the defendant establishes, by a preponderance of the evidence, that the aggregate amount

in controversy exceeds the jurisdictional amount. *See Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).[1] To satisfy the preponderance of the evidence test, a defendant must demonstrate that "it is more likely than not" that the amount in controversy is satisfied. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). However, evidentiary submissions are **not** required ***at the time of removal***. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (holding that defendant need not prove the amount in controversy in notice of removal). "Instead, evidence showing the amount in controversy is required '*only when* the plaintiff contests, or the court questions, the defendant's allegation.'" *Id.* (emphasis added).

21. Indeed, when a defendant seeks to remove an action to federal court on grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation should be accepted [as true] when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 547 U.S. 81, 135 S.Ct. 547, 553 (2014); *Arias*, 936 F.3d at 927 ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'"). At the time of removal, the removing defendant's burden of establishing that the amount in controversy exceeds $75,000 is not daunting and does not require the defendant to do extensive research or prove the plaintiff's damages. *See, e.g., Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, *16 (C.D. Cal. May 9, 2011). Thus, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S.Ct. at 554.

---

[1] *See, e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) ("A district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.").

22.    A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCrosse v. Knight Truck & Trailer Sales, LLC*, 775 F.3d 1200, 1202 (9th Cir. Jan. 8, 2015) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  In determining whether the amount in controversy exceeds $75,000, the court must presume that the plaintiff will prevail on each and every claim asserted in his or her complaint.  *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002).  The ultimate inquiry asks what amount is put "in controversy" by the operative complaint—not what a court or jury might later determine to be the actual amount of damages, if any.  *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal").[2]  The court may also look beyond the complaint to determine whether the amount in controversy is met, if necessary.  *See Abrego*, 443 F.3d at 690.

23.    The amount in controversy may include general and special compensatory damages.  *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1031 (N.D. Cal. 2002).  Further, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also Galt G/S v.*

---

[2] *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy'…for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *see also Wilder v. Bank of Am.*, 2014 WL 6896116, *4 (C.D. Cal. Dec. 5, 2014) (determining amount in controversy requires that court assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint because the ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe).

188472011.4

6

*JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Moreover, "a court **must** include **future** attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emphasis added); *see also Chavez*, 888 F.3d at 414–415 ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses **all** relief a court may grant on that complaint if the plaintiff is victorious.") (emphasis added). The amount in controversy may also include punitive damages and emotional distress. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Kroske,* 432 F.3d at 980.

### *Plaintiff's Complaint Alleges Damages in Excess of the Jurisdictional Threshold*

24.     In this action, Plaintiff's Complaint asserts claims for: (1) sexual orientation discrimination in violation of Cal. Gov't Code § 12940(a); (2) failure to take reasonable steps to prevent discrimination in violation of Cal. Gov't Code § 12940(k); (3) retaliation pursuant to Cal. Gov't Code § 12940(h); (4) harassment in violation of Cal. Gov't Code § 12940(k) and (5) wrongful termination in violation of public policy. Exh. A (Complaint).

25.     Although Plaintiff does not allege a specific dollar amount that she seeks to recover in connection with her claims, she asserts that the amount in controversy exceeds $35,000 and the Complaint expressly seeks, among other things, damages for:

a.     "economic damages" which include "lost earnings, wages, and benefits in an amount to be proven at trial." *See* Exh. A (Complaint) at ¶¶ 17, 23, 29, 38, 46, and p. 9;

b.     "general damages" and "compensatory damages" which include "pain and suffering, humiliation, embarrassment, mortification, and emotional distress, all

in an amount to be proven at trial." *Id*. at ¶¶ 18, 23, 29, 39, 47, and p. 9;

      c.    "attorneys' fees and costs." *Id*. at ¶¶ 19, 25, 31, 40, and p. 10;

      d.    "pre-judgment interest." *Id*. at p. 10; and

      e.    "punitive" or "exemplary damages." *Id*. at ¶¶ 20, 24, 30, 41, 48 and p. 10.

26.    As discussed above, Defendants may remove this action to federal court notwithstanding Plaintiff's failure to plead a specific dollar amount in controversy. To that end, Defendants' Notice of Removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee*, 135 S.Ct. at 555; *see Arias*, 936 F.3d at 925 ("[A] notice of removal 'need not contain evidentiary submissions.' Instead, evidence showing the amount in controversy is required 'only when the plaintiff contests, or the court questions, the defendant's allegation.'"). Moreover, Defendants' allegations regarding federal court jurisdiction, including the amount in controversy, **must be accepted as true** unless and until otherwise contested. *Accord Dart Cherokee*, 135 S.Ct. at 553.

27.    As set forth above, and necessarily assuming that Plaintiff will prevail on each claim asserted in the Complaint, the compensatory damages, emotional distress damages, punitive damages, and statutory attorneys' fees sought by Plaintiff establish that the amount in controversy exceeds $75,000.

### *Economic Damages*

28.    In her Complaint, Plaintiff states that she worked for Genpact, LLC from 2006 to 2008, and then again starting in 2010 as a Compliance Manager. Exh. A (Complaint) at ¶ 6. Plaintiff further alleges that Defendants wrongfully terminated her employment on December 14, 2023, which she asserts was due to her sexual orientation and in retaliation for her complaints of discrimination. *Id*. at ¶¶ 6–11.

29.    The Complaint avers that, as a result of Defendants' alleged conduct, Plaintiff has suffered various damages, including economic damages, including, but not limited to, lost earnings, wages, and benefits. *See id*. at ¶ 17.

30.    Notably, the amount in controversy is not limited to damages incurred prior to removal.  Instead, as the Ninth Circuit has held, the amount in controversy calculation properly includes lost wages incurred **_after the time of removal_** where, as here, they are expressly prayed for as relief in the operative pleading.  *See Chavez*, 888 F.3d at 417–418 (holding that lost wages incurred after removal were appropriately included in the amount in controversy since they were claimed at the time the case was removed by defendant).  Indeed, in determining the amount in controversy, it is appropriate to consider the amount of lost wages through the time of trial.  *See, e.g.,* *Walker v. Aetna Health & Life Ins. Co.*, 2021 WL 2661449, *8 (E.D. Cal. June 29, 2021) ("Defendants are correct that the amount in controversy calculation properly includes lost wages through trial, since a 'potential defense does not reduce the amount in controversy for purposes of establishing federal jurisdiction'"); *Fisher v. HNTB Corp.*, 2018 WL 6323077, *4 (C.D. Cal. Dec. 3, 2018) (one year of post-removal lost earnings accepted as "date of trial" estimate and held to be properly included in the amount of controversy); *Tiffany v. O'Reilly Auto. Stores, Inc.*, 2013 WL 4894307, *3–4 (E.D. Cal. Sept. 11, 2013) (post-removal lost earnings through trial properly included in the amount in controversy).

31.    At the time her employment was terminated, Plaintiff was a full-time employee and her annualized salary was $73,660.08 ($1,416.54 per week), not including bonuses, commissions, or other benefits.[3]    Plaintiff's employment terminated on December 14, 2023, which is approximately twenty (20) weeks prior to removal.  Based on her weekly salary, Plaintiff's past lost wages for the amount

---

[3] If challenged, Defendants expressly reserve, and do not waive, their right to supplement and/or amend their removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy, including, without limitation, by including any lost benefits in calculating the amount in controversy—which would **_increase_** the amount in controversy.  *See Arias*, 936 F.3d at 922 ("a removing defendant's notice of removal 'need not contain evidentiary submission'"); *Janis v. Health Net, Inc.*, 472 F. App'x 533, 534–535 (9th Cir. Mar. 20, 2012) (holding court erred in refusing to consider evidence of amount in controversy submitted *after* removal in response to a remand motion).

in controversy are conservatively estimated at $28,330.80 ($1,416.54 per week x 20 weeks).

32.     Defendants further estimate Plaintiff will have future lost wages (which her Complaint seeks) for only a period of six additional months (or 26 workweeks), from the date of Defendants' filing of their Notice of Removal (May 1, 2024) through November 1, 2024.  Based on this estimate, and without calculating any additional lost wages through trial that Plaintiff is expressly seeking, the amount in controversy on Plaintiff's future lost wages claim from May 1, 2024 through November 1, 2024 is **$36,830.04** ($1,416/week × approximately 26 weeks [May 1, 2024 – November 1, 2024]), exclusive of any bonuses, commissions, or other benefits.

33.     Consequently, without including future lost wages beyond November 1, 2024, the amount in controversy on Plaintiff's prayer for past and future lost wages from December 14, 2023 to November 1, 2024 is conservatively and reasonably calculated to be **$65,160.84**.[4]

---

[4] These figures are **_extremely_** conservative and, in fact, **_severely_** underestimated because, as the Ninth Circuit has made clear, lost wages are calculable **_after the time of removal and/or through the time of trial_**, and here, Defendants are only relying on Plaintiff's purported lost wages through November 1, 2024, i.e., **_less than one year_** after Plaintiff's alleged termination date.  *See, e.g.*, *Zamudio v. Aerotek, Inc.*, 2022 WL 458059, *3 (E.D. Cal. Feb. 15, 2022) (denying remand and accepting calculation of **_160 weeks_** of post-removal lost wages through trial as appropriately included in amount in controversy calculation); *Thayer v. Securitas Sec. Servs. USA, Inc.*, 2021 WL 1263837, *2 (C.D. Cal. Apr. 6, 2021) (denying remand and holding removing defendant properly estimated lost wages from the date of plaintiff's termination until the date set for trial); *Beltran v. Procare Pharmacy, LLC*, 2020 WL 748643, *3 (C.D. Cal. Feb. 14, 2020) (remand denied; court held that one year of post-removal lost earnings accepted as "conservative estimate" in employment cases and to be properly included in the amount of controversy); *Fisher*, 2018 WL 6323077, at *4 (one year of post-removal lost earnings accepted and held to be properly included in the amount in controversy); *Chavez*, 888 F.3d at 417–418 (holding that lost wages incurred after

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]

***Emotional Distress Damages***

34.     Plaintiff also seeks to recover "general damages" and "compensatory damages" which include "pain and suffering, humiliation, embarrassment, mortification, and emotional distress, all in an amount to be proven at trial." *See* Exh. A (Complaint) at ¶¶ 18, 23, 29, 39, 47, and p. 9.

35.     Emotional distress damages are appropriately considered by the Court in determining whether the amount in controversy is satisfied for purposes of removal. *Kroske*, 432 F.3d at 980; *see also, e.g.*, *Simmons*, 209 F. Supp. 2d at 1034. In *Kroske*, 432 F.3d at 980, an age discrimination case, the Ninth Circuit held that the trial court properly estimated $25,000 for emotional distress damages for purposes of satisfying the amount in controversy where the plaintiff's wage loss was only $55,000.   Accordingly, based on Plaintiff's Complaint and the estimate accepted by the Ninth Circuit in *Kroske* (a 2005 case that has not accounted for the inflation in the 19 years since the Kroske decision issued), Defendants conservatively estimate that the minimum value of Plaintiff's emotional distress damages for his purported "severe emotional distress" if she were to prevail (as must be presumed for purposes of removal) would be **at least $25,000.00** for purposes of calculating the reasonable amount in controversy in this action.

***Punitive Damages***

36.     Plaintiff also seeks "punitive" or "exemplary damages."   Exh. A (Complaint) at ¶¶ 20, 24, 30, 41, 48 and p. 10.

removal were appropriately included in the amount in controversy since they were claimed at the time the case was removed by defendant); *Garcia v. ACE Cash Express, Inc.*, 2014 WL 2468344, *4 (C.D. Cal. May 30, 2014) (removing defendant properly estimated lost wages for the estimated time between removal and trial); *Tiffany*, 2013 WL 4894307, at *3–4 (denying remand and accepting calculation of ***108 weeks*** of post-removal lost wages through date of trial as appropriately included in amount in controversy calculation).

188472011.4

11

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]

37. The Ninth Circuit has held that punitive damages should be considered by a district court when determining the amount in controversy where they are recoverable as a matter of law. *See Gibson*, 261 F.3d at 945. District courts routinely find that "the potential for large punitive damage awards" in employment cases satisfies the $75,000 amount in controversy without even considering other damages. *See Simmons*, 209 F. Supp. 2d at 1033; *see also, e.g.*, *Chambers v. Penske Truck Leasing Corp.*, 2011 WL 1459155, *4 (E.D. Cal. Apr. 15, 2011) (finding that amount in controversy was satisfied because "punitive damages in employment matters may be substantial"); *Haase v. Aerodynamics Inc.*, 2009 WL 3368519, *4 (E.D. Cal. Oct. 19, 2009) (acknowledging million dollar punitive damages awards and denying remand in employment action, noting that "even a minimum award of punitive damages would satisfy the jurisdictional requirement"). Furthermore, punitive damages verdicts on claims similar to Plaintiff's claims here, typically far exceed the $75,000 jurisdictional minimum **on their own**. *See, e.g.*, *Lopez v. Bimbo Bakeries USA, Inc.*, 2009 WL 1090375, *10–18 (Cal. Ct. App. Apr. 23, 2009) (affirming *$2 million* punitive damages award on plaintiff's FEHA discrimination/wrongful termination claims).

38. In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 403, 425 (2003), the U.S. Supreme Court held that the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process." While Defendants could easily utilize the 2:1 ratio that *State Farm* found to be "instructive," other courts in this district have held that a 1:1 ratio between punitive damages and compensatory damages "provides a reasonable, if not 'conservative,' estimate for assessing punitive damages for purposes of calculating the amount in controversy. *See, e.g., Johnson*, 2023 WL 2713988 at *7. Utilizing the smallest ratio of 1:1 (but without conceding its ultimate propriety for use in this case), and basing any potential exemplary

damages award solely on the compensatory damages at issue in this action **as alleged herein** (which do not include lost wages or employment benefits through trial), the **minimum** punitive damages award in this action is approximately **$90,160.84** [($65,160.84 + $25,000) = $90,160.84].

### Statutory Attorneys' Fees

39. Plaintiff's Complaint also seeks statutory attorneys' fees in connection with her claims. *See* Exh. A (Complaint) at ¶¶ 19, 25, 31, 40, and p. 10.

40. In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *Fritsch*, 899 F.3d at 794; *see Galt*, 142 F.3d at 1155–1156 ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Indeed, "a court **_must_** include **_future_** attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emphasis added).

41. The Court's own knowledge and experience in ruling on prevailing plaintiffs' motions for attorneys' fees in discrimination and wrongful termination cases, like this action, should indicate that it is "more likely than not" that Plaintiff will seek an attorneys' fees award of **at least $75,000.00** if this case is litigated to judgment in a jury trial.[5] *See, e.g., Lopez,* 2009 WL 1090375, at *18–21 (affirming trial court's award of $1 million in attorneys' fees in wrongful termination action); *Crawford v. DirecTV, Inc.*, 2010 WL 5383296 (Cal. Super. Ct. Sept. 29, 2010) (awarding approximately $160,000 in attorneys' fees in wrongful termination action

---

[5] Given the other damages at issue in this action, even a minimal award of attorneys' fees would cause the amount in controversy to further exceed the jurisdictional minimum in this action. *See, e.g., Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, *6 (C.D. Cal. Mar. 3, 2015) (using a "reasonable rate for employment cases" of $300 per hour and "an appropriate and conservative estimate" of 100 hours to find that attorneys' fees in that case could "reasonably be expected to equal at least $30,000").

13

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]

where the plaintiff's recovered damages were only $175,000). Likewise, based on their own past litigation experience, Defendants reasonably estimate at this juncture that their own attorneys' fees to defend this action through a jury trial and post-trial motions will be well ***over*** **$75,000.00**.

42. Notwithstanding the above, Defendants ***conservatively*** estimate that Plaintiff's statutory attorneys' fees to litigate this action through a jury trial would be ***at least*** **$30,000.00** ($300 [rate per hour] × 100 hours [hours estimate]) = $30,000.00] for purposes of calculating the reasonable amount in controversy. *See Crockett v. Wal-Mart Assocs., Inc.*, 2024 WL 516713,*4 (E.D. Cal. Feb. 9, 2024) (using a "reasonable rate" of $300 per hour and "an appropriate estimate" of 100 hours to find that a reasonable estimate of attorneys' fees is $30,000); *Owuor v. Wal-Mart Assocs., Inc.*, 2022 WL 1658738, *3 (E.D. Cal. May 25, 2022) (finding that $30,000 ($300 per hour × 100 hours) is a reasonable estimate of attorneys' fees in a single plaintiff discrimination case).

### *Summary of Amount in Controversy*

43. Based on the foregoing, and excluding for purposes of this removal any overtime compensation, any lost employment benefits to which Plaintiff claims to be entitled, and any future lost wages beyond ***November 1, 2024***, the amount in controversy on Plaintiff's Complaint far exceeds the $75,000 jurisdictional threshold, as follows:

| Damages/Amounts Claimed | Amount in Controversy |
|---|---|
| Past/Future Lost Wages (salary only) | $65,160.84 |
| Emotional Distress Damages | $25,000.00 |
| Punitive Damages (1:1 ratio of compensatory damages) | $90,160.84 |
| Statutory Attorneys' Fees | $30,000.00 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$210,321.68** |

### *Venue*

44.     Venue lies in this Court because the State Court Action is pending in this district and division.  *See* 28 U.S.C. § 1441(a).

45.     Nothing in this Removal Notice is intended, or should be construed, as any type of express or implied admission by Defendants of any fact, of any validity or merits of any of Plaintiff's claims, causes of action, or allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Defendants' rights, claims, remedies, or defenses in connection with this action (including, without limitation, challenges, defenses, rights, and claims relating to personal jurisdiction or service of process, and issues related to the arbitrability of Plaintiff's claims), all of which are hereby fully and expressly reserved.

WHEREFORE, Defendants respectfully request the above-captioned action now pending in the Superior Court of the State of California in Los Angeles County be removed to this United States District Court for the Central District of California.

1884720011.4

15

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]

DATED: May 8, 2024                       Respectfully Submitted,

                                   **MCGUIREWOODS LLP**

By: /s/ Selwyn Chu
     Sabrina A. Beldner
     Selwyn Chu
     Attorneys for Defendants Genpact LLC and
     Antara Chatteriee

188472011.4

16

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, CA 90067-1501.

On May 8, 2024, I served the following document(s) described as **DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

THE RUTTEN LAW FIRM, APC.          Attorneys for Tassy Rueweler
Howard Rutten
Guillermo Galindo                          *howard@ruttenlawfirm.com*
21860 Burbank Boulevard, Suite 340    *guillermo@ruttenlawfirm.com*
Woodland Hills, California 91367

☒    **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices.  (C.C.P. § 1013 (a) and 1013a(3))

☐    **BY ELECTRONIC DELIVERY:** I caused said document(s) to be transmitted electronically to the above addressees. (C.C.P. § 1010.6)

☐    **BY OVERNIGHT DELIVERY:**  I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.  (C.C.P. § 1013(d)(e))

☐    **BY PERSONAL SERVICE:**  I caused such envelope(s) to be delivered the addressee(s). (C.C.P. § 1011)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 8, 2024, at Los Angeles, CA.

_____
Matthew Whitney

PROOF OF SERVICE